MISSISSIPPI STATE HIGHWAY COMMISSION
*v.* MADISON COUNTY, MISSISSIPPI

No. 42014          December 4, 1961          135 So. 2d 708

*Ray, Spivey & Cain,* Canton, for appellant.

*G. B. Herring,* Canton, for appellee.

JONES, J.

Madison County sued the Highway Commission in the Circuit Court of Madison County. The County obtained a judgment and the Highway Commission appeals.

The case was filed under Section 20, Chapter 303, Laws of 1958, reading as follows: "Whenever the state, or any agency or subdivision thereof, or any private organization, corporation, association or person acquires, by condemnation, or otherwise, any easement or right of way across any sixteenth section land or lieu land, then adequate compensation therefor shall be paid by the party acquiring the same to the county board of supervisors concerned and the sum or sums so received shall be placed in the principal fund or funds of the school district or districts concerned."

The Highway Commission had constructed, or was constructing, a highway running in a northerly direction across the E½ of Section 16, Township 8, Range 2 East. The County had leased the N½ of the Section to B. K.

Williamson and the S½ to A. M. Watts. Both leases were for a period of 25 years and had approximately 14 years to run at the time of the trial. The Highway Commission obtained easements from both leaseholders and then began constructing the road. Having reached no satisfactory agreement with the County, this suit was filed to recover damages due to the County for injuries to the land and the taking of a part thereof. The sole question involved was the amount due.

The County introduced Mr. E. W. Trussell, who had had about 30 years experience in appraising property. He worked 26 years with the Farm Credit Administration. The first assignments given him were 227 loan applications in Madison County. He worked in Mississippi, Alabama and Louisiana for four years as a field appraiser, then spent about twenty years reviewing appraisals over the three states. For two years he was chief of the appraisals review at the Federal Land Bank in New Orleans. For five and a half years he was in Washington as Associate Chief of Appraisers for the entire United States for the Farm Credit Administration. During 1941 and 1943 he did appraisal work for the War Department, appraising lands to be acquired for army camps. The last few years he has done private appraisal work, including some for the Highway Commission. He was a member of the American Society of Rural Appraisers, a national organization, and had done appraisals in practically every state in the Union.

He had appraised the property here in question for the County. He figured the before and after value of the entire section of land in order to determine the present damage done. He used two methods for figuring this damage.

He valued the entire tract of land at $220 per acre, and with 640 acres, the before taking value figured $140,880. There were 42.28 acres, not including two small easements, actually occupied or to be occupied by the

highway. This left a total of 597.72 acres remaining after the taking. This witness estimated that the severance damage amounted to fifteen percent of the value of the remaining lands, thus making the per acre value of the remaining lands $187 per acre, which, multiplied by 597.72 acres remaining, amounted to $111,774, the present value after taking. In his opinion, the difference, $29,026, was the present damage to the lands.

He also figured the present damage by capitalizing the rents on the basis of five percent. While the leases in force, which had been executed eleven or twelve years prior to the time of trial, only provided for rent at the rate of $2.00 per acre, Mr. Trussell testified as an appraiser that in order to fix the value of property as rental property by the capitalization method, you used a present rental value. His opinion was that a conservative present rental value of the section involved was $6.00 per acre, which would amount to $3840 rent per year. Capitalizing this on the basis of a five percent net income would make the present value for rental purposes before taking $76,800. He estimated the severance damage at one-third of the rental so that after the taking the reasonable rental value on 597.72 acres would be $4.00 per acre, or a total of $2,390.88 per year, which, capitalized at five percent net income, would amount to $47,817 as the value after the taking, so that the present damage to the land by this method would be $28,983.

The question then arose as to how the damages should be apportioned between the tenants and the County. Mr. Trussell, in making this apportionment, assumed a 99 year lease as equivalent to a fee simple title. Since the tenants had approximately fourteen years remaining on their contracts, he apportioned to them 14/99ths, of the total damage and to the County 85/99ths, which, under the methods of determining the damages as used by him, would entitle the County under the first method named to $24,905, and under the second method to $24,-

720. In addition to this, the County would be entitled to the present value of the rents for the remaining fourteen-year period which after having been commuted would amount, according to the testimony offered by the Highway Commission, to $757, and that amount added to the figures testified by Mr. Trussell would amount to approximately $25,500. The jury returned a verdict for the County in the sum of $21,367.

The president of the board of supervisors testified that the land was above average land; that $6.00 per acre under present conditions was a reasonable rental for the land, making a present value for rental purposes of $76,800; that in his opinion the road would damage the rental value to the extent of fifty percent, and after deducting the acreage taken for the road, would leave the value for rental purposes at $25,865, or damages in the sum of $40,935.

Both Mr. Trussell and Mr. Mansell, the President of the Board, testified that there would be severance damages to the land as a whole. This was to be a limited access road and there would be no crossing of the road nor entry thereon within the limits of the section involved. There was a public road which extended along the east side of the section and along the south side of the section. A bridge was to be erected where the road at the south side of the section crossed the highway. However, within the farm lands there would be no crossing of the highway. The County's witnesses testified this would damage the rental value of the property in that tenants would be unable to cross the new road with tractors, trucks, or other vehicles. Also that in present times and with the mechanization of farms, people were more interested in large farms. Further, that the severance of the lands would call for more fencing and the more fence there was the less land there would be for use because of inability to cultivate to the fences. Too, there would be the maintenance of the additional fences.

The Highway Commission had two witnesses and their testimony was to the effect that the only damage that the County would sustain would be the loss of the actual acreage taken, plus the present value of the future rents. Their position was that there would be no severance damages for which the County should recover. It was further their position that the amount awarded to the County for the lands taken would be determined by the present actual value of the land (which they placed at $225 per acre) commuted or discounted for a period of fourteen years because of the leases on the land. The Highway Commission appraiser testified: "My estimate of the market value, the fair market value, of the property taken was $9,650. $9,650 discounted for receipt today at 6 percent would at the end of 13 years amount to $4523."

While the damages shown by the County were based upon present values and were damages that were done at this time, the Highway Commission contended that the present value of the damages should be discounted.

The plaintiff was given the following instructions: "The court instructs the jury for the Plaintiff that the Sixteenth Section of land involved in this suit is owned by the State of Mississippi as trustee for school purposes; that the Plaintiff, under provisions of law, was, at the time of the execution of the leases involved, custodian of said land with the power, under provisions and procedure prescribed by law, to lease said lands for agricultural purposes, but that neither the legislature of the State nor the Board of Supervisors of the County had the power, at the time the leases involved were executed, to authorize or execute a lease contract, or any other contract, the terms of which can be taken advantage of, directly or indirectly, by defendant, through a method of appraisal or otherwise, to reduce the state's damages below the difference between the fair market value of the state's estate in the section of land involved,

burdened by the unexpired term of the lease, before the taking, and the fair market value of the remainder of said estate, burdened by the leases, after the taking.''

''The court instructs the jury for the Plaintiff that out of such award as you may, from a preponderance of the evidence, determine should have been made as total damages to the entire section of land involved, you may not deduct, to the prejudice of the county, as damages which should have been awarded the lessees, tenants, any amount in excess of such damages as you determine, from a preponderance of the evidence, was sustained by the lessees, the tenants, measured by the difference between the value of the remaining fourteen year term of their lease before the taking and the reduced value of the remaining 14 year term of their lease, after the taking, and reduced by the rent at the rate of $2.00 per acre per year for 14 years on the 42.79 acres taken for a highway.''

The Highway Commission was given the following instruction: ''The court instructs the Jury for the State Highway Commission that settlement has only been made in this case with the leaseholders on the Sixteenth Section lands here involved, but that the County is entitled to recover the damages which it has sustained by the taking of said land for a highway, and it devolves on you honestly and impartially to estimate the amount thereof according to the evidence adduced on the trial, the weight and credibility of which you are the sole judge. To do this, you should first determine the amount of damages to the entire premises here involved and then apportion such damages by giving to the County the value of its reversion and the rents provided for during the term of the present leases, less an abatement, or discount, for present payment. By reversion is meant what is left over to the County after the termination of the present lease.''

The jury, after hearing the evidence above mentioned and receiving the instructions, returned a verdict as aforesaid for the sum of $21,367. Deducting therefrom the present value of the future rents amounting to $757 would leave $20,610 as the amount the jury found the County should receive for the other damages, which would be between four and five thousand dollars less than the damages testified by the witnesses for the County. The jury evidently rejected the Highway Commission's evidence that the reversion was not damaged by the severance and adopted the theory of Mr. Trussell.

We are not to be understood as committing ourselves to a holding that the methods used by Mr. Trussell in determining the damage and apportioning the same are the only true and correct methods. But they are the ones that were presented by a man of great experience, as his opinion based on his experience, and the jury had a right to accept same. While the opinions of experts as to value are not to be blindly followed, they are to be weighed by the jury and judged in view of all of the testimony in the case and the jury's own general knowledge of affairs and are to be given such consideration as the jury may believe them entitled to receive. Warren County v. Harris, 211 Miss. 80, 50 So. 2d 918.

We are unable to say that a "present value" should be discounted. The purpose of discount in a case such as this would be to determine the present value of something of which the future value is known.

It is clear to us that the case was fairly tried and that the instructions fairly presented the issue to the jury. In fact, the Highway Department was given an instruction authorizing the jury "to value the reversion after the expiration of the present leases." There was absolutely no evidence in the record as to what the reversion would be worth fourteen years from this date. Nobody in fact could testify with any reasonable degree of cer-

tainty as to such fact. All the testimony was as to present damages and values.

■■ ■ The Highway Commission complains because it was refused this instruction:

"The Court instructs the jury for the State Highway Commission that in arriving at your verdict you shall not consider any element of inconvenience or other elements which are speculative and remote."

This was not error for the reasons shown in Mississippi State Highway Commission v. Stout, No. 42,015, decided November 20, 1961.

■■ ■ The Highway Commission also complains that the verdict is grossly excessive. We do not so consider it. The Highway Commission on the question of discount relies largely on the case of Levee Commissioners v. Johnson, 66 Miss. 248, 6 So. 199. We have read that case and the Missouri case therein cited and neither of them persuades us to depart from our conception of the case hereinbefore stated.

Affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.