Smith *v.* Mississippi State Highway Commission

No. 43503 April 26, 1965 174 So. 2d 374

*Quitman Ross, George D. Maxey,* Laurel, for appellant.

*Boyd, Holifield & Harper,* Laurel, for appellee.

Lee, C. J.

The Mississippi State Highway Commission, by eminent domain proceedings in the county court, sought to condemn a right-of-way for Interstate Highway No. 59 across a tract of land. With Miss Janie Inez Smith, the owner, was joined Jordan Gatlin, a leaseholder of a portion of the lands, also as a defendant.

The jury, on the hearing, fixed the damages of Miss Smith at $27,000 and the damages of Jordan Gatlin at $1,750.

From the judgment entered thereon, the Highway Commission appealed. The learned circuit judge, after a consideration thereof, was of the opinion that the appeal of the Highway Commission as to the assignment on the verdict to Gatlin was of no merit; but that the verdict for Miss Smith was excessive. He, therefore, under date of August 11, 1964, ordered that unless, within 20 days, $4,500 of the judgment of $27,000 to Miss Smith should be remitted, the cause should be remanded to the docket for a new trial. Thereafter, on August 25, Miss Smith prayed for and obtained an appeal to the Supreme Court; and on August 27, the Highway Commission appealed from the judgment, affirming the decision of the county court as to Gatlin.

Thus the Court has for consideration two appeals, namely, the appeal by Miss Smith from the ruling of the court on the remittitur of $4,500, and the appeal by the Highway Commission on the affirmance of the judgment for Gatlin.

Miss Smith is the owner of an irregularly shaped tract of land, comprising 197 acres. Thirty-five acres of this

land is situated east of, and adjacent to, U. S. Highway No. 11. The balance of said tract is situated on the west side of Highway No. 11. The right-of-way for the proposed highway will actually take 18.76 acres. This will leave 37.8 acres between the new highway and Highway No. 11. On this part of the tract the home and most of the improvements are to be found. These are not disturbed. The principal value of this land is for grazing. The acreage, remaining west of the new highway will aggregate 105.4 acres. However, that area is separated by the right-of-way of the Southern Railroad, substantially paralleling the highway right-of-way. The 45 acres west of the railroad are largely woodland, low and swampy, with small parts thereof suitable for grazing purposes. Between the railroad and the condemned right-of-way, the area of 60.4 acres is suitable for pasturage, and has, in part, been improved.

The home and outhouses, although of substantial age, are in a fair state of repair. This property is about 5.5 miles from the courthouse at Laurel. The landowner does not have a railroad crossing between the different parcels of land. Her access to the western part of the place was by way of Hawks Crossing, and then partly over the land of the abutting owner to the north. But the new highway will cut this road in two. All of the land to the west of the highway right-of-way is cut off and greatly depreciated in value because of a circuitous and somewhat unsatisfactory method of access.

J. W. Morgan, the appraiser for the State Highway Commission, estimated the before value of the property at $30,000 and the after value at $20,200, or damage in the sum of $9,800.

J. P. Parish, appraiser for the landowner, estimated the before value at $224,850 and the after value at $168,834, with a resultant damage of $56,016.

Jordan Gatlin, under date of August 1, 1962, leased the SW¼ of NW¼ and NW¼ of SW¼ of Section

14 of this land for grazing purposes for a period of 5 years. In accordance with the agreement between the parties, he was to rebuild the fences, bush hog the pasture land, keep the fences up, fertilize the pasture lands and put them in a good state of production. The consideration was stated as $125 a year. However, because of the expense which would be entailed he was given credit for the first year's rent. Gatlin testified in detail to the expenditures which it was necessary for him to make in order to comply with the agreement and to get this property in a suitable condition for pasture purposes. As itemized, these expenses consisted of the following: (1) Bush hog work $180; (2) 40 tons of lime at $10, $400; (3) 3 tons of commercial fertilizer, $201; (4) 9 rolls of wire at $7.50, $67.50; (5) 200 posts at $.42, $84; and (6) repair of fences — labor $180. The total amounts to $1,112.50. In addition to this he made his payment of $125 due on August 1, 1964. This made an outlay of $1,237.50. There was no evidence of any income therefrom.

 █ The Highway Commission, in its suit made Gatlin a party. As the court proceeded to try this case, no demand for separate trials was made. Actually this was a trial for the condemnation of property as to which, the relationship of landlord and tenant was in effect between Miss Smith and Gatlin on a substantial part thereof. It is true that section 2756 of Mississippi Code Annotated (1956) provides that, if the application seeks to condemn the property of more than one defendant interested in different property, a separate trial shall be had for each. But this situation in the title did not make separate properties within the contemplation of that statute. Actually, in the case of Lee v. Indian Creek Drainage Dist., 246 Miss. 254, 148 So. 2d 663 (1963), the taking of a portion of the demised property was held to operate as an apportionment of the rent and dissolves the relation of landlord and tenant pro

tanto. Besides, the opinion in that case recognized that a different method was approved in Miss. State Highway Comm'n v. Madison County, 242 Miss. 471, 135 So. 2d 708 (1961).

It is true that the action in the case of Lee v. Indian Creek Drainage Dist., *supra*, was taken under section 4692 of Mississippi Code Annotated (1956), which is an eminent domain proceeding in the chancery court for the purpose of procuring rights-of-way in drainage districts. There the amount of damages was considered first by the commissioners and then by the chancellor.

██ █ In the present case, the tribunal was composed of both the judge and the jury. Protracted litigation is not desirable. Obviously the rights of Miss Smith and Gatlin had to be settled. It was necessary for the jury to be fully apprised of all the facts in order to determine the relative merits of the litigants. Besides, the court has the power and authority to render as many verdicts and judgments as may be necessary. Mississippi Code Annotated secs. 1549-50 (1956).

██ █ In the case of Miss. State Highway Comm'n v. Ladner, 243 Miss. 176, 137 So. 2d 784 (1962), the opinion held that it was error to exclude evidence of the price paid for land 7 years before the date of the trial. The total expended cost of a lease so recent as the one here involved was not only proper but afforded a satisfactory basis for determining its value inasmuch as the right-of-way of the new highway will destroy its efficacy. ██ █ What the jury actually did was to find the whole damage to be $28,750, and it then apportioned the division of such damage in accordance with its verdicts.

The Court, in approving the method here employed, repeats what was said in Miss. State Highway Comm'n v. Madison County *supra*, at page 480, as follows: ''We are not to be understood as committing ourselves to a holding that the methods used by Mr. Trussell in

determining the damage and apportioning the same are the only true and correct methods.''

Consequently, the Court is of the opinion that justice was done in this instance and the judgment in this respect should be affirmed.

■■ ■ From a thorough consideration of all of the evidence in the case, the Court finds itself in complete agreement with the conclusion of the learned circuit judge that the verdict for Miss Smith was excessive. The Court should, and does, approach with trepidation the matter of adjudging a jury verdict to be grossly excessive. But it must be remembered that man, at his best, is still imperfect; that sometimes even juries go awry; and that all agencies must necessarily be subject to regulation in order to insure justice.

Until the lease of a part of this property for grazing purposes, there was little evidence of its income producing character. Even then the Court is unable to see how the property can be rated so highly in value as the appraiser for the landlord testified. The area west of the new highway will be badly depreciated on account of its severance. Obviously on account of its location near a growing city, the property is desirable and valuable. However, in its opinion, the Court is wholly unable to concur in the amount fixed by the jury. On the contrary, it is of the opinion that the learned trial judge was liberal and actually generous. Under all of the facts and circumstances, the Court is of the opinion that the judgments of the circuit court, in both instances, should be and they are affirmed.

Affirmed.

*Ethridge, Gillespie, Brady and Inzer, JJ.*, concur.